[No. 20941.   Department One.   January 31, 1928.]

THE STATE OF WASHINGTON, *Respondent*, v. TOM MASON, *Appellant*.[1]

[1] CRIMINAL LAW (183)—EVIDENCE—SUFFICIENCY—IDENTITY OF AC-CUSED.  · In a prosecution for assault with intent to rape, the identity of the accused is a question for the jury, where it appears that he overheard a conversation disclosing the intention of the prosecuting witness to attend a certain show, a man of his build and peculiarities followed her that evening until she was alone, and assaulted her, and she identified him as her assailant, although she had not seen his face.

[2] CRIMINAL LAW (447)—REVIEW—HARMLESS ERROR—CROSS-EX-AMINATION OF WITNESS.  Upon an issue as to the identity of the accused, prejudicial error cannot be assigned upon an inter-polation of the prosecuting witness (when asked as to why she did not cause his arrest when she first saw him after-wards) "he was arrested, and his previous record"—evidently being a reference to his previous good record, as a reason for hesitation in accusing him.

[3] CRIMINAL LAW (384)—APPEAL—PRESERVATION OF GROUNDS—NECESSITY OF OBJECTIONS.  Error cannot be assigned upon cross-examination of the accused touching his conviction of another crime, which he admitted in a justice court and appealed to the superior court, where it was dropped, in the absence of any objection at the time, or any motion for a new trial.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered December 13, 1926, upon a trial and conviction of assault with intent to rape.  Affirmed.

· *Henry Clay Agnew*, for appellant.

*Ewing D. Colvin* and *Cordelia M. Thiel*, for respondent.

PARKER, J.—The defendant Mason was, by information filed in the superior court for King county, duly charged with the crime of assault in the second degree,

¹Reported in 263 Pac. 602.

committed in that county, by feloniously making an assault upon a Miss Johnson with intent to commit the crime of rape upon her. The case proceeded to trial in the superior court sitting with a jury, resulting in a verdict finding Mason guilty as charged, upon which a final judgment was rendered against him, sentencing him to imprisonment in the penitentiary "for a term of not less than five years and not more than ten years." From this judgment, Mason has appealed to this court.

[1] The principal contention here made in behalf of Mason is that the evidence does not sustain the verdict and judgment; appropriate and timely challenge to the sufficiency of the evidence having been so made in the superior court and overruled prior to its rendering final judgment. The evidence is overwhelming that Miss Johnson was brutally assaulted, with intent upon the part of her assailant as charged. Indeed, we do not understand counsel for Mason to contend to the contrary; the contention being that the evidence is, in law, insufficient as proof of the identity of Mason as the assailant of Miss Johnson.

The principal facts pertaining to this question, as we think the jury were warranted in viewing them, may be summarized as follows: The scenes of our present inquiry are, for the most part, along and near that portion of 10th avenue northeast in Seattle running north from North 40th street. Miss Johnson was, at the time in question, twenty-three years old, and lived with her father and sisters on 12th avenue northeast, two blocks east of 10th avenue near North 65th street, where she had lived for some twenty years. She had a friend, Miss Hart, who lived on North 78th street, a few doors west of 10th avenue northeast. Miss Johnson and Miss Hart have been, for several years past, employed by separate business concerns in

the principal business district of the city. At the con-
clusion of their employment on the day immediately
preceding the night during which Miss Johnson was
assaulted, they met in the business district and went
to a hospital to visit a sick friend. They left the hos-
pital shortly before 8 o'clock that evening for their
homes, taking a street car to 10th avenue northeast
and North 40th street, where they transferred to a
stage automobile, the route of which was north along
10th avenue to and beyond the northerly city limits.
This was an ordinary seven-passenger touring auto-
mobile. Mason was sitting in the front seat with the
driver. Miss Johnson took her position in a jump seat
just behind Mason, while Miss Hart took her position
in the rear seat just behind Miss Johnson.

Soon after the stage started, Miss Johnson noticed
Mason turn and stare at her. This seemed to be then
of no consequence. She and Mason had known each
other for several years past, though not having a
speaking acquaintance. He had worked in a grocery
store a few blocks distant from Miss Johnson's home
and knew where she lived. As they proceeded in the
stage, Miss Johnson and Miss Hart talked of going to
a show that evening, located several blocks west of
Miss Hart's home. They debated the question of
whether they should first go to dinner at Miss John-
son's home or to Miss Hart's home. They finally
agreed to go to Miss Hart's home for dinner, with the
intention of reaching the show at about 9 o'clock in
the evening. Mason could have heard this conversa-
tion. So, instead of getting off the stage at 65th street
to go to Miss Johnson's home, they went on to 78th
street, there getting off the stage and going to Miss
Hart's home, a short distance west of 10th avenue.
Mason remained on the stage, proceeding towards his
home which was farther north.

Having finished their dinner at Miss Hart's home about 9 o'clock, they started to the show, proceeding west on 78th street. After proceeding about a block, they saw a man hurriedly approaching from their rear. He was of Mason's peculiar build, bow-legged, short and stocky, with unusually broad shoulders, walking with a peculiar swinging gait, with his hands in his vest; that is, his thumbs in the armholes of his vest, as the evidence indicates was his somewhat marked habit. He passed them, they failing to see his face. When they returned to Miss Hart's home after the show, they had a similar experience in the same place with a man they felt sure was the same man. They went into Miss Hart's home and stayed there about ten minutes. They had found at the show two younger girl friends who had returned with them. They all went out together, proceeding south along 10th avenue; Miss Hart's intention being to accompany the younger girls to their homes, which were in that direction.

Miss Johnson parted from the other three at about 68th street, she proceeding on south and east for some four or five blocks to her home. Within about two blocks of her home, she became conscious of a man following her, as she thought, and a little later became sure of that fact. She was unable to see his face, but his general appearance, that is, his short, stocky build, broad shoulders, bow-legs and manner of walking, convinced her that he was the same man whom she and Miss Hart had twice before that evening encountered on 78th street. Just as she was about arriving opposite the lawn at the front of her home, the man following her made a brutal assault upon her, the particulars of which need not be recited here, the question being only as to who that man was. The man was soon frightened away and escaped without Miss Johnson or

anyone seeing his face. She was in such an hysterical condition that she clung to the neighbor coming to her assistance, so that he was at the moment unable to follow the man.

The matter was immediately reported to the police and an investigation commenced. A few days later, Miss Johnson accidentally saw a man sitting on a step or ledge in front of the postoffice, whom she then felt practically sure was the man who had assaulted her. She hesitated in coming finally to that conclusion then, evidently because of the fact that she recognized that the man she there saw was Mason, and she could hardly believe it possible that he would have made such an assault; so she did not report that incident to the police at that time. A few days later, she was called by the police to the police station for the purpose of identifying, if she could, as her assailant a man there held upon another charge. She there had presented before her Mason and immediately recognized him, as he also recognized her, expressing her firm conviction that he was the man who had assaulted her.

There is room for arguing that her cross-examination in some measure weakened her expressed conclusion that Mason was the man who had assaulted her. Viewing all of the circumstances, we cannot conclude, as a matter of law, that the jury were not warranted in reaching the same conclusion expressed by Miss Johnson on that subject. It, of course, is not a question of whether or not the judge of the trial court, or the judges of this court, would decide, as a matter of fact, beyond reasonable doubt, that Mason was the man guilty of making the assault upon Miss Johnson. Our only proper inquiry here is, was the evidence presented to the jurors touching that question such as to warrant them, as reasonable men, in arriving at the conclusion, as a matter of fact, beyond reasonable doubt, that

Mason was the one guilty of the assault. So viewing this record, we cannot see our way clear to interfere with the verdict and judgment for want of evidence supporting them.

[2] Contention is made, in behalf of Mason, that error to his prejudice occurred in the following incident in the cross-examination of Miss Johnson by Mr. Agnew, his counsel:

"Q. Did you testify in your direct examination that when you saw Tom Mason sitting there on the post-office steps that you realized that was the man who had assaulted you? A. Yes, sir. Q. Why didn't you go down and report it to the police? A. Because of the shock to my mind. I wondered how he could have lived in our neighborhood for so many years and I had never heard anything about him—he was arrested, and his previous record — [she was here interrupted] Mr. Agnew: I move to strike the witness's answer. The Court: That is her reason. [Witness proceeded] That was the reason I did not have him arrested, because I debated how it could be the man I knew had lived there so long. I never heard anything like that, although I realized right away that he was the man who attacked me."

The words "he was arrested" were apparently inadvertently used, because at that time, so far as she knew, he had not been arrested. The words, "his previous record," may seem somewhat out of place in the inquiry, but, even so, they point as much towards a good record as a bad record. Indeed, whatever she had in mind as constituting "his previous record," she was apparently weighing it in his favor rather than against him. It was manifestly one of the reasons she had for hesitating about causing his arrest. Viewing this incident in all of its possible bearings, it seems to us that there was no prejudicial error therein.

[3] Some contention is made in behalf of Mason that he was unwarrantedly and prejudicially cross-

examined by counsel for the prosecution touching his conviction of another crime. In the light of the record, it is difficult for us to follow counsel for Mason in his arguing this contention. It does appear that, upon the conclusion of the state's evidence, counsel for Mason and counsel for the prosecution indulged in considerable argument before the court touching the possible cross-examination of Mason by counsel for the prosecution concerning his prior conviction of another crime, should Mason be put upon the stand as a witness in his own behalf. This colloquy led to nothing, and no ruling by the court; yet it seems to be looked upon by counsel for Mason as the basis of his present contention.

After Mason had testified in his own behalf, counsel for the prosecution did, upon cross-examination, ask him if he had been convicted at a prior time in a justice court of a certain immoral offense, and he answered that he had, though he further testified, indicating that such conviction had been appealed from to the superior court and its prosecution abandoned by counsel for the prosecution. No record was produced of any such conviction or of appeal therefrom. We do not find, in connection with this cross-examination, any objections or exceptions whatever made at the time suggesting a claim of error in connection therewith. The record so appearing touching this contention, it seems plain to us that there is not here presented any reversible error in connection therewith.

Confining ourselves strictly to the record before us, we might well have ignored the last two contentions made by counsel for Mason, which, had they been well grounded, might have led to awarding a new trial. We do not find in the record brought here any evidence of a motion for a new trial having been made in the superior court. We assume, for sake of argument,

that possibly the record appearing in the superior court may show such motion as having been made.

We find no reversible error in the record before us, and therefore conclude that the judgment and sentence must be affirmed. It is so ordered.

MACKINTOSH, C. J., TOLMAN, and MITCHELL, JJ., concur.